Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:    516.741.4977
Facsimile:    516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PATIPAN NAKKHUMPUN,<br><br>                       Plaintiff,<br><br>          vs.<br><br>NEOLEUKIN THERAPEUTICS, INC., MARTIN BABLER, CANTEY BOYD, ERIN LAVELLE, SARAH NOONBERG, ROHAN PALEKAR, and TODD SIMPSON,<br><br>                       Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1)  Violation of § 14 (a) of the Securities Exchange Act of 1934<br>(2)  Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff, Patipan Nakkhumpun ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

<u>**SUMMARY OF THE ACTION**</u>

1.      Plaintiff brings this stockholder action against Neoleukin Therapeutics, Inc. ("Neoleukin" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a

result of Defendants' efforts to merge with Neurogene Inc. ("Neurogene" or "Parent"), through merger vehicle Project North Merger Sub, Inc. a wholly owned subsidiary of Neoleukin ("Merger Sub") as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed merger transaction (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in a July 18, 2023 filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, each existing share of Neurogene common stock will be converted into the right to receive newly issued shares of Neoleukin common stock or Neoleukin pre-funded warrants. Neurogene pre-funded warrants will also be converted into Neoleukin pre-funded warrants. Additionally, as part of the Proposed Transaction, Neoleukin's pre-merger stockholders and certain option and warrant holders will receive a contingent value right ("CVR") for each outstanding share of Neoleukin stock held.   Post-close, current Neoleukin stockholders are expected to own only approximately 16% of the Company.   After completion of the merger, Neoleukin will change its corporate name to "Neurogene Inc." and it will trade under the symbol "NGNE."

3.      Thereafter, on August 21, 2023, the Company filed a Form S4 attaching the Registration Statement (the "Registration Statement") with the SEC in support of the Proposed Transaction.

4.      The Proposed Transaction is unfair for a number of reasons.  Significantly, it appears as though the Board has entered into an agreement which will provide no consideration to any Company stockholder whatsoever, other than the dilution of their shares and a non-guaranteed CVR.

5.      The Registration Statement is materially deficient, depriving Plaintiff of the information necessary to make an intelligent, informed, and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act.  As detailed below, the Registration Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Neoleukin and Neurogene, provided by Neoleukin management to the Board and the Board's financial advisor Leerink Partners LLC ("Leerink Partners"); (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinion created by Leerink Partners, if any, provided to the Company and the Board.

6.      Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction.

## PARTIES

7.      Plaintiff is a citizen of California and, at all times relevant hereto, has been a Neoleukin stockholder.

8.      Defendant Neoleukin is a biopharmaceutical company that develops immunotherapies for cancer, inflammation, and autoimmunity using protein design technology. Neoleukin developed sophisticated computational methods to design proteins that demonstrated specific pharmaceutical properties to provide potentially superior therapeutic benefit over native proteins. The Company is incorporated in Delaware and has its principal place of business at 188 East Blaine Street, Suite 450, Seattle, WA, 98102.  Shares of Neoleukin common stock are traded on the Nasdaq Stock Exchange ("Nasdaq") under the symbol "NLTX".

9.      Defendant Martin Babler ("Babler") has been a Director of the Company at all relevant times.

10.     Defendant Cantey Boyd ("Boyd") has been a director of the Company at all relevant times.  In addition, Boyd was a member of the Transaction Committee.

11.     Defendant Erin Lavelle ("Lavelle") has been a director of the Company at all relevant times. In addition, Lavelle was a member of the Transaction Committee.

12.     Defendant Sarah Noonberg, MD, PhD ("Noonberg") has been a director of the Company at all relevant times.   In addition, Noonberg was a member of the Transaction Committee.

13.     Defendant Rohan Palekar ("Palekar") has been a director of the Company at all relevant times.

14.     Defendant Todd Simpson ("Simpson") has been a director of the Company at all relevant times.

15.     Defendants identified in ¶¶ 9 - 14 are collectively referred to as the "Individual Defendants."

16.     Non-Party Parent Neurogene is a clinical-stage biotechnology company committed to turning today's complex devastating neurological diseases into treatable conditions. By harnessing Neurogene's proprietary transgene regulation technology, EXACT ("Expression Attenuation via Construct Tuning"), Neurogene is building a robust and differentiated product portfolio of genetic medicines for rare neurological diseases with high unmet need not otherwise addressable by conventional gene therapy. Neurogene's EXACT approach leverages key scientific breakthroughs, including gene transfer technology, microRNA-based genetic circuits, and adeno-

associated virus delivery, and is designed to deliver therapeutic levels of transgene to key areas of the brain that underlie neurological disease pathology.

17.     Non-Party Merger Sub is a wholly owned subsidiary of Company created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

19.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

20.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, for example, the Company's stock trades on the NASDAQ Exchange which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

### *Company Background*

21.     Defendant Neoleukin is a biopharmaceutical company that develops immunotherapies for cancer, inflammation, and autoimmunity using protein design technology.

Neoleukin developed sophisticated computational methods to design proteins that demonstrated specific pharmaceutical properties to provide potentially superior therapeutic benefit over native proteins.

22.     One of the company's lead product candidates, NL-201, is a de novo protein designed to mimic the therapeutic activity of the cytokines interleukin (IL)-2/IL-15 for the treatment of various types of cancer, including renal cell carcinoma and melanoma.

23.     In a press release on November 14, 2022 for the clinical and financial results of 2022, the Company discussed its performance and financial results.  Chief executive officer ("CEO") Jonathan Drachman stated: "We will be using the information we have learned from the development of NL-201 and advances in protein design to build the next generation of de novo protein therapeutics."

24.     Drachman continued, noting the Company's potential for future success: "We expect to focus on technology that widens the therapeutic window, such as the development of targeted and conditionally activated molecules to create potent immune agonists. We believe we are well positioned to do this work based on our expertise in de novo protein design combined with our experience in advanced machine learning and neural networks, which allows us to predict and create structures for de novo proteins with more sophisticated and dynamic structural elements than was previously possible...This coincides with a strategic decision to discontinue development of NL-201, which we believe was the first fully de novo protein to be evaluated in clinical trials…We are grateful to the patients and families that participated in this Phase 1 trial and to the investigators and study personnel who enabled rapid testing of NL-201 during a global pandemic."

25.     These clinical results are indicative of potential for future success by Neoleukin.

26.     Nevertheless, the Individual Defendants have caused Neoleukin to enter into the Proposed Transaction without providing requisite information to Neoleukin stockholders such as Plaintiff.

***The Flawed Sales Process***

27.     As detailed in the Registration Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

28.     Notably, the Registration Statement fails to disclose adequate reasoning as to why the Board would agree to a deal in which shareholders' interests would be diluted, with no consideration given except for a non-guaranteed CVR payment.

29.     The Registration Statement indicates that a committee of disinterested directors was formed to review the Proposed Transaction, but it fails to indicate whether the committee was empowered to veto a potential transaction not in the best interests of shareholders. Furthermore, the Registration Statement discloses that Boyd, a member of the Transaction Committee, had a serious conflict of interest in being an employee of Baker Bros. Advisors LP ("BBA"), a large stockholder of Neurogene.  Despite such a clear conflict, the Board allowed Boyd to remain on the Transaction Committee undercutting the committee's independence.

30.     Additionally, the Registration Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Neurogene, whether this agreement differed from any other agreement with potentially interested third parties not specifically mentioned by the Registration Statement, if so, in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions

contained therein, including, all specific conditions, if any, under which such provisions would fall away.

31.     It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

***The Proposed Transaction***

32.     On July 18, 2023, Neoleukin and Neurogene issued a press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> **New York, NY and Seattle, WA** – July 18, 2023 – Neurogene Inc., a clinical-stage company founded to bring life-changing genetic medicines to patients and families affected by rare neurological diseases, and Neoleukin Therapeutics, Inc. (NASDAQ:NLTX) today announced that they have entered into a definitive merger agreement to combine the companies in an all-stock transaction. The combined company will focus on advancing Neurogene's pipeline of differentiated genetic medicines, including NGN-401, a clinical-stage product for Rett syndrome, which uses novel gene regulation technology for a potential best-in-class profile. Upon completion of the merger, which is subject to approval by Neurogene and Neoleukin stockholders, the combined company is expected to operate under the name Neurogene Inc. and trade on the Nasdaq Capital Market under the ticker symbol "NGNE".
>
> In connection with the merger, Neurogene announced an oversubscribed $95 million private financing led by new and existing healthcare-dedicated specialist and mutual fund institutional investors, including participation from Great Point Partners, EcoR1 Capital, Redmile Group, Samsara BioCapital, Janus Henderson Investors, funds and accounts managed by Blackrock, Casdin Capital, Avidity Partners, Arrowmark Partners, Cormorant Asset Management, Alexandria Venture Investments and a healthcare investment fund.
>
> With the cash from both companies at closing and the proceeds of the concurrent private financing, the combined company is expected to have approximately $200 million of cash or cash equivalents immediately following the closing. The cash resources are intended to be used to advance Neurogene's pipeline through multiple clinical milestones and are expected to fund operations into the second half of 2026. The merger and concurrent private financing are expected to close in the fourth quarter of 2023, subject to stockholder approval both companies, the effectiveness of a registration statement to be filed with the U.S. Securities and Exchange Commission to register the securities to be issued in connection with the merger and concurrent financing, and the satisfaction of customary closing conditions.

"We are excited to announce our planned merger with Neoleukin, which we believe is a transformative step forward in our mission to bring life-changing genetic medicines to the patients and families impacted by devastating neurological diseases," said Rachel McMinn, Ph.D., Founder and Chief Executive Officer of Neurogene. "This transaction is expected to bolster our ability to progress our differentiated pipeline, including our clinical-stage program in Rett syndrome which contains our novel, proprietary EXACT technology. We believe EXACT represents a meaningful technological advance for the gene therapy field, allowing us to develop therapeutic product candidates for complex diseases with attractive market opportunities not addressable with conventional gene therapy. This capital will also support our internal manufacturing capabilities, which we expect will continue to provide significant financial and strategic flexibility. With cash on hand at the close of this transaction expected to fund operations into the second half of 2026, we believe we are well positioned to successfully execute beyond multiple anticipated clinical inflection points for both Rett syndrome and Batten disease, and advance our discovery stage pipeline."

"This merger with Neurogene reflects the continued commitment of our management team and Board of Directors to deliver value to stockholders and, importantly, meaningfully improve patients' lives," said Donna Cochener, Interim Chief Executive Officer and General Counsel of Neoleukin. "Neurogene has an innovative genetic medicines portfolio, in-house product design and manufacturing capabilities, an impressive management team, and will be well positioned to deliver multiple data readouts in the next 18 to 24 months. We are grateful to our current and former employees who contributed to Neoleukin's efforts and look forward to the combined company's continued progress and success."

**About Neurogene's Portfolio and EXACT Gene Regulation Platform**
Neurogene's internally manufactured portfolio of purposefully designed therapies aims to address several key limitations of conventional gene therapies, including variable gene expression, safety limitations, and inefficient gene delivery.
The company's novel and proprietary Expression Attenuation via Construct Tuning (EXACT) gene regulation platform technology is a self-contained transgene regulation platform that can be tuned to deliver a desired level of transgene expression within a narrow range, potentially avoiding transgene related toxicities associated with conventional gene therapy. EXACT is compatible with viral and non-viral delivery platforms.

Neurogene's clinical-stage portfolio includes:

**NGN-401**: NGN-401 is an investigational AAV9 gene therapy being developed as a one-time treatment for Rett syndrome. It is the first candidate to deliver the full-length human MECP2 gene under the control of Neurogene's EXACT technology. Embedding EXACT technology into NGN-401 is an important advancement in gene therapy for Rett syndrome, specifically because the disorder requires a treatment approach that enables targeted levels of MECP2 transgene expression

without causing toxic effects associated with conventional gene therapy. Rett syndrome is a debilitating, X-linked, neurodevelopmental disorder with significant unmet medical need, and one of the most common genetic causes of developmental and intellectual impairment in females.

The robust preclinical data package for NGN-401 provides evidence of a potentially compelling efficacy and safety profile in Rett syndrome. The company's Investigational New Drug (IND) application was cleared by the U.S. Food and Drug Administration in January 2023. In the U.S., NGN-401 has received Orphan Drug Designation, Rare Pediatric Disease Designation, and Fast Track designation. Neurogene plans to commence dosing in a Phase 1/2 trial (NCT05898620) designed to assess the safety, tolerability, and efficacy of a single dose of NGN-401 in female pediatric patients with Rett syndrome in the second half of 2023, with preliminary data expected in the fourth quarter of 2024 from the first cohort of patients, and additional expected data in the second half of 2025 from an expanded set of patients.

**NGN-101**: NGN-101 is being developed as a one-time treatment for both ocular and neurological manifestations of CLN5 Batten disease using AAV9 to deliver the gene encoding CLN5, which is deficient in children with the disease. Batten disease is a family of rare neurodegenerative diseases caused by pathogenic changes in one of a series of genes that results in the accumulation of toxic deposits across multiple organ systems. CLN5 Batten disease is a rare, pediatric-onset and rapidly progressive condition caused by a pathogenic mutation in the CLN5 gene, leading to loss of function. It is characterized by loss of vision, seizures, and progressive decline in intellectual and motor capabilities beginning in childhood leading to substantial impairments and early mortality.

In preclinical studies, NGN-101 has demonstrated the potential to slow or halt the key features of disease progression, including associated vision and motor declines. NGN-101 has received Orphan Drug Designation by U.S. and European regulatory agencies and is currently being evaluated in a Phase 1/2 clinical trial in children with CLN5 Batten disease (NCT05228145). Preliminary data is expected in the second half of 2024.

In addition to these two clinical-stage programs, Neurogene is also advancing a discovery-stage candidate that will expand its pipeline into an additional area of high unmet need. Neurogene expects to initiate a clinical study of this candidate in 2025.

**About the Proposed Merger**

Under the terms of the merger agreement, Neoleukin will issue to pre-merger Neurogene stockholders shares of Neoleukin common stock as merger consideration in exchange for the cancellation of shares of capital stock of Neurogene, and Neurogene will become a wholly owned subsidiary of Neoleukin. Pre-merger Neoleukin stockholders are expected to own approximately

16% of the combined company and pre-merger Neurogene stockholders (including those purchasing Neurogene shares in the concurrent private financing discussed above) are expected to own approximately 84% of the combined company. The percentage of the combined company that pre-merger Neurogene stockholders and pre-merger Neoleukin stockholders will own as of the close of the proposed transaction is subject to certain adjustments as described in the merger agreement, including the amount of Neoleukin's net cash at closing. In connection with the closing of the proposed transactions, Neoleukin stockholders will also be issued contingent value rights representing the right to receive certain payments from proceeds received by the combined company, if any, related to Neoleukin's pre-transaction legacy assets or from savings realized by the combined company, if any, related to the reduction of Neoleukin's legacy lease obligations.

Upon closing of the proposed transaction, Neoleukin Therapeutics, Inc., will be renamed Neurogene Inc. The combined company will be led by Rachel McMinn, Ph.D., Founder and Chief Executive Officer of Neurogene, and other members of the Neurogene management team. The combined company's Board of Directors will be comprised of five board members selected by Neurogene and two board members selected by Neoleukin. The transaction has been unanimously approved by the Board of Directors of each company and is expected to close in the fourth quarter of 2023, subject to customary closing conditions, including the approval of the transaction by the stockholders of each company.

***Potential Conflicts of Interest***

33.     The breakdown of the benefits of the deal indicates that Neoleukin insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Neoleukin.

34.     The Registration Statement fails to adequately disclose communications regarding post-transaction employment. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

35.     Thus, while the Proposed Transaction is not in the best interests of Neoleukin, Plaintiff, or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Registration Statement***

36.     On August 21, 2023, the Neoleukin Board caused to be filed with the SEC a materially misleading and incomplete Registration Statement that, in violation the Exchange Act, fails to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

37.     Specifically, the Registration Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Registration Statement fails to disclose:

    a.     As to Transaction Committee, whether the committee retained the power to veto potential transactions, especially given one member's conflict of interest as to Parent;

    b.     Whether the confidentiality agreements entered into by the Company with Neurogene differed from any other unnamed confidentiality agreement entered into between the Company and an interested third parties;

    c.     All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company

and potentially interested third parties throughout the sales process, including Neurogene, would fall away; and

    d.    Adequate and complete disclosure of communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

*Omissions and/or Material Misrepresentations Concerning Neoleukin and Neurogene Financial Projections*

38.    The Registration Statement fails to provide material information concerning financial projections for Neoleukin and Neurogene provided by Neoleukin management to the Board and Leerink Partners and relied upon by Leerink Partners in its analyses.

39.    Notably, the Registration Statement reveals that as part of its analyses, Leerink Partners reviewed, "certain internal information, primarily related to expense forecasts, relating to the business, operations, earnings, cash flow, assets, liabilities and prospects of Neoleukin, as furnished to Leerink Partners by the management of Neoleukin."

40.    Additionally, the Registration Statement reveals that as part of its analyses, Leerink Partners also reviewed, "certain internal information relating to the business, operations, earnings, cash flow, assets, liabilities and prospects of Neurogene, including the Financial Forecasts prepared by management of Neoleukin".

41.    The Registration Statement should have, but fails to provide, certain information in the projections that Neoleukin management provided to the Board and Leerink Partners. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market

multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects."  *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-203 (Del. Ch. 2007).

42.     With respect to the *Neoleukin Liquidation Analysis*, the Registration Statement fails to disclose:

    a.  The inputs, metrics, and assumptions used to determine the discount rate of 4.65%.

43.     With respect to the *Summary of Neurogene Financial Forecasts*, the Registration Statement fails to disclose:

    a.  The inputs, metrics, and assumptions used to determine Total Adjusted Net Revenues, including net revenue associated with product sales and potential future royalty and milestone payments;

    b.  The inputs, metrics, and assumptions used to determine Total Gross Profit, including costs of goods sold and royalties owed by Neurogene on NGN-401;

    c.  The inputs, metrics, and assumptions used to determine Total Operating Income, including operating expenses.

    d.  The inputs, metrics, and assumptions used to determine Unlevered Free Cash Flow, including operating income, tax expense, and changes in networking capital.

44.     Significantly, the Registration Statement fails to provide any projection information, besides a liquidation analysis, for the Company on a standalone basis, to the detriment of Plaintiff and other shareholders. Nevertheless, as indicated in the Registration Statement, Leerink Partners received internal information as to Neoleukin's prospects and expense forecasts.

45.    Specifically, the Registration Statement's failure to disclose substantive material projection data prevents Plaintiff from being fully informed as to the nature of the Proposed Transaction and preventing him from making a fully informed decision on whether to vote in favor of the same.

46.    This information is necessary to provide Plaintiff, in his capacity as a Company stockholder, with a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

47.    Without complete and accurate projection data for Neoleukin or Neurogene being presented in the Registration Statement, Plaintiff is unable to properly evaluate the Company's true worth, the value of the merger consideration, the accuracy of the Leerink Partners' financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction.  As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Leerink Partners*

48.    In the Registration Statement, Leerink Partners describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for,

underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

49.     With respect to the *Valuation Analysis – Discounted Cash Flow*, the Registration Statement fails to disclose:

       a.   The inputs, metrics, and assumptions used to determine the annual decline of 10% for cash flows in perpetuity;

       b.   The range of implied terminal values for Neurogene calculated;

       c.   The inputs, metrics, and assumptions used to determine the discount rate ranging from 10% to 12%;

       d.   Neurogene's weighted average cost of capital utilized; and

       e.   The capital asset pricing model inputs utilized by Leerink, including specifically, target capital structure, levered and unlevered betas for certain companies deemed by Leerink Partners to be comparable to Neurogene, and the equity market risk premium and yields for U.S. treasury bonds

50.     With respect to the *Selected Public Companies Analysis*, the Registration Statement fails to disclose:

       a.   Any specific multiple reference range utilized, and the specific inputs and assumptions used to determine the same;

       b.   The number of fully-diluted number shares outstanding for Neurogene; and

       c.   The inputs, metrics and assumptions used to determine the utilized 20% illiquidity discount rate

51.     Finally, it does not appear that any valuation analyses were done for the Company or the Pro-Forma entity.

52.     These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

53.     Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Neoleukin stockholder.  As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

## FIRST COUNT

## Violations of Section 14(a) of the Exchange Act

## (Against All Defendants)

54.     Plaintiff repeats all previous allegations as if set forth in full herein.

55.     Defendants have disseminated the Registration Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

56.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or
> instrumentality of interstate commerce or of any facility of a national securities
> exchange or otherwise, in contravention of such rules and regulations as the [SEC]
> may prescribe as necessary or appropriate in the public interest or for the protection
> of investors, to solicit or to permit the use of his name to solicit any proxy or consent

or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

57.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

58.     The Registration Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Registration Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

59.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

60.     The Individual Defendants were at least negligent in filing a Registration Statement that was materially misleading and/or omitted material facts necessary to make the Registration Statement not misleading.

61.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in

favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## SECOND COUNT

## Violations of Section 20(a) of the Exchange Act

## (Against all Individual Defendants)

62.     Plaintiff repeats all previous allegations as if set forth in full herein.

63.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Registration Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

64.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Registration Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Registration Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Registration Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

65.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Neoleukin's business, the information contained in its filings with the SEC, and its public statements.   Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Registration Statement was misleading.   As a result, the Individual Defendants are responsible for the accuracy of the Registration Statement and are therefore responsible and liable for the misrepresentations contained herein.

66.     The Individual Defendants acted as controlling persons of Neoleukin within the meaning of Section 20(a) of the Exchange Act.   By reason of their position with the Company, the Individual Defendants had the power and authority to cause Neoleukin to engage in the wrongful conduct complained of herein.   The Individual Defendants controlled Neoleukin and all of its employees.   As alleged above, Neoleukin is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.   By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.     Enjoining the Proposed Transaction;

B.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained

therein not misleading;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

<u>**DEMAND FOR JURY TRIAL**</u>

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: August 25, 2023                                  **BRODSKY & SMITH**

By:  *Evan J. Smith*
Evan J. Smith
240 Mineola Boulevard
Mineola, NY  11501
Phone:  (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*